IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:13-CV-270-D

| | |
|---|---|
| VICTORIA L. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MCGILL ENVIRONMENTAL | ) |
| SYSTEMS OF NC, INC., | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL
### RULE 30(B)(6) DEPOSITION

Plaintiff hereby submits her brief in support of her motion to compel the Defendant to produce a corporate representative for deposition under Fed. R. Civ. P. 30(b)(6) with regard to punitive damages topics.

## I. INTRODUCTION

Plaintiff has scheduled the deposition under Rule 30(b)(6) of Defendant's corporate representative on various topics, including ones relevant to the punitive damages claim. Plaintiff's punitive damages claim was properly alleged in the Complaint under N.C. Gen. Stat. Chapter 1D. The claim is credibly based and well-supported particularly given the evidence of a repeated pattern of intentional safety violations and injuries which culminated in the death of Mr. Taylor. Defendant's prior incidents of injuries are documented by multiple affidavits in the record. (*See* Doc. 29-8). This evidence reflecting a willful and wanton lack of proper safety practices is further detailed in the proposed First Amended Complaint ("FAC") filed on November 14, 2014. (Doc. 34-2). However, Defendant has indicated its witness will not testify on topics relevant to the punitive damages claim at this time. Plaintiff is entitled to undertake

1

this fair and relevant discovery and has made an adequate, credible, *prima facie* showing of entitlement to punitive damages sufficient to allow this discovery to proceed.

## II. BACKGROUND FACTS

Plaintiff Ms. Taylor filed her Complaint on December 19, 2013 (Doc. 1). In it she alleged that due in material part to the Defendant's unsafe operation of its waste pick-up services from the Smithfield Packing plant in Clinton, North Carolina, her husband, Brandon Taylor, died as a result on inhaling hydrogen sulfide, a well-known toxic gas.

The Complaint alleged that Mr. Taylor died after climbing up on top of Defendant's tanker truck and was exposed to toxic fumes that came up out of the hatch of the tanker as he was loading slaughterhouse waste. (Complaint ¶¶ 1, 4, 22-23). Defendant McGill sent its tankers to pick up the waste despite prior incidents in which other individuals were injured because of the gas. (*Id.* ¶¶ 3, 17-20). Because the tanker was a closed container, the gas could come out of its hatch while it was being loaded with the waste. (*Id.* ¶ 27). There were no warnings on the tanker and McGill failed to provide any warnings to those who worked atop its tankers about the releases of gas, despite the prior incidents. (*Id.* ¶¶ 5, 17-21, 26-27).

The punitive damages claim is found at the Third Claim for Relief, Complaint ¶¶ 44-47. It is pled in accordance with the North Carolina punitive damages statute, N.C. Gen. Stat. § 1D-1 *et seq.* Under N.C. Gen. Stat. § 1D-15(a), a claimant can recover punitive damages if she proves that the defendant is liable for compensatory damages and that an aggravating factor was present such as (1) fraud; (2) malice; or (3) willful or wanton conduct. Here, Plaintiff has alleged willful and wanton conduct. *See* Complaint ¶ 46.

Under § 1D-15(c), punitive damages may be awarded against a corporation if the officers, directors, or managers participated in or condoned the conduct constituting the

aggravating factor. Here, the Plaintiff has alleged that the company, among other things, continued to send tankers to Smithfield for loading with toxic waste despite having knowledge of the dangers of the waste and of prior incidents and injuries. *See* Complaint ¶ 33.

Under § 1D-35, in determining punitive damages, the trier of fact is to consider the purposes of punitive damages set forth in § 1D-1, and may consider evidence that relates to a series of listed factors including items such as the likelihood, at the relevant time, of serious harm (subsection b), the degree of the defendant's awareness of the probable consequences of its conduct (sub c), the existence and frequency of any similar past conduct by the defendant (sub g), "[w]hether the defendant profited from the conduct" (sub h), and "[t]he defendant's ability to pay punitive damages, as evidenced by its revenues or net worth" (sub i).

Plaintiff's Rule 30(b)(6) deposition notice served on October 31, 2014 expressly included a very straightforward topic for punitive damages, as follows:

> 35. McGill's profits from hauling waste from 2010-14; McGill's profits from hauling waste from Smithfield from 2010-14; McGill's revenues from 2010-14; and McGill's net worth from 2010-14.

(See Notice of Deposition, attached as **Exhibit 1**). Plaintiff also included topics regarding the prior incidents of injury, safety violations and state OSHA penalties, among other things. (*See id.*) More recently, the Plaintiff served an amended notice to accommodate a January 7, 2015 deposition date based on the availability of Defendant's corporate representative, Noel Lyons. (*See* Amended Notice, **Exhibit 2**). This amended notice is substantially similar to the original notice except that the Plaintiff has added parenthetical detail to topic nos. 16, 18 and 32.

Also, Plaintiff filed a motion to amend with a proposed First Amended Complaint on November 14, 2014 (the FAC is filed at Docket 34-2). The FAC reflects facts learned during discovery and relevant evidence recently received from present and former employees at McGill

3

and Smithfield and from state OSHA files regarding McGill's safety record. It alleges in detail and specificity how McGill had a history of individuals being exposed to and injured by toxic gases and fumes, yet did nothing to correct the situation for many years. *See* FAC ¶¶ 17-18, 34-40, 44-63. These included specific incidents of fume and gas injuries which led to complaints and one or more workers' compensation claims against McGill by its own workers, as reflected by Affidavits filed with the Court and found at Doc. 29-8:

1. In her Affidavit, Marie Jugger describes how her husband worked for McGill and was overcome by fumes and gases resulting in being taken from the facility in an ambulance to the hospital in 2003. He later brought a worker's compensation claim against McGill, which is attached to her Affidavit and describes injury from "a cloud of chemicals."

2. Fred Hayes in his Affidavit describes how he used to work for McGill; he would get blasts of gas to the face, the McGill management knew, and a supervisor said "it can't be good for you" at one point.

3. Woody Gillis avers how fumes and gases were significant problems when he worked at McGill; one reason he stopped working there was the fumes.

4. Wilbur Fennell avers that he was employed by McGill from 1999 through 2004, he drove tanker trucks for McGill; the rotten egg fumes made it hard to breathe; once gas coming out of a hatch injured his eye, and McGill managers were aware of the problems and injuries.

5. Former McGill employee Aaron Cromartie states in his Affidavit how bad fumes came out of the tankers and McGill was aware of worker concerns regarding working with the waste at night with poor equipment and lighting.[1]

---

[1] Further there is unrefuted evidence in the record that Defendant inaccurately omitted this information from its discovery responses. In Interrogatory No. 8, Plaintiff specifically asked Defendant to describe any incidents of complaints or claims concerning injuries or illnesses from any hazardous substances, including hydrogen sulfide. Defendant responded that "no such incidents involving an individual or employee being injured or made ill because of hazardous substances, chemicals, hydrogen sulfide or other gases at any McGill facility or with regard to any McGill tanker-trailer or other McGill vehicle exist." *See* Doc. 29-3, at p. 5 (McGill's first discovery responses, previously filed). It is telling that McGill inaccurately denied the very existence of these prior incidents. Further McGill still has not corrected his discovery responses to this day despite the now-uncovered evidence.

4

Furthermore, Plaintiffs have put forth Affidavit evidence reflecting that on more than one occasion, individuals at Smithfield who were working atop the McGill tanker trucks were injured by the gases from the waste. These Affidavits are also found at Doc. 29-8:

1. Jonathan Gardner describes how he worked at Smithfield and supervised workers such as Brandon Taylor, the Plaintiff's decedent. Unlike its competitor EMA, McGill sent tankers at night when lighting was worse, and because of the location of the access ladder on the McGill tanker, the worker had to climb all the way up on top putting him closer to the open hatch and the gas.

2. Ulysses Boykin states in his Affidavit how he performed similar tasks as Mr. Taylor. On January 19 and 24, 2012, Mr. Boykin was loading waste on a McGill tanker and was injured in his eyes and could not breathe due to the fumes that came up from the open tanker hatch. These incidents happened only a couple weeks before the gas exposure that killed Mr. Taylor on February 18, 2012.

3. Tim Artis avers how he was another coworker of Mr. Taylor; he was working on top of a similar McGill tanker two years before in early 2010; and he was overcome by gases from the open hatch and lost conscious, falling off the tanker and sustaining severe injuries.

Furthermore, state OSHA records reflect how over the years, state authorities were investigating and penalizing McGill for gas and fumes-related problems at its facilities. (FAC ¶¶ 96-128).[2]

---

[2] These facts are described at length in Plaintiff's brief supporting her motion to amend, filed at Doc. 34. For purposes of supporting a *prima facie* claim for punitive damages, it is worthwhile to note how the prior investigations and penalties from the state OSHA agencies involve similar issues as the incident to Mr. Taylor. OSHA authorities were concerned in 2002 over McGill's lack of personal protective equipment when individuals were working with liquid biosolid wastes, the same waste involved in case *sub judice*. There were problems with inadequate lighting for work at night and inadequate training. The present fatality occurred in poor lighting and Plaintiff alleges the driver was inadequately trained. In 2003, McGill received penalties for allowing an employee to be "exposed to the decomposition products of organic materials including, but not limited to, ammonia." *See* Doc. 29-7, OSHA records, at page 44 of 91 (so stating). Like ammonia, hydrogen sulfide is a decomposition product. These and other facts are alleged at FAC ¶¶ 96-128 and many of the OSHA records were previously filed at Doc. 29-7. Defendant was repeatedly assessed monetary penalties by OSHA for safety violations, yet continued to engage in them. Defendant was not deterred by the OSHA penalties which it clearly regarded as an acceptable cost of doing business. *See* Doc. 29-7, OSHA records, at pages 1-5, 18-19, 35-37, 41-46, 63-69, 83-85 (penalties and fines). In fact, McGill was also subjected to monetary penalties as a result of the OSHA investigation arising out of Mr. Taylor's death, as the original Complaint alleges. Complaint ¶ 28.

Furthermore and very pertinent for punitive damages, Defendant made promises and assurances of compliance to the OSHA authorities which Defendant did not follow through with.

1. McGill in 2002 announced "new policies on tankers" and informed OSHA that "no one is allowed on top of tankers." Doc. 29-7, pp. 77, 80. If McGill had followed through on this policy Brandon Taylor may never have been on the McGill tanker.

2. McGill assured OSHA it was ensuring "employee safety responsibilities" including to "report accidents" and "exposures to hazardous substances" and to "report acts and conditions that don't seem right….." Doc. 29-7, p. 82. However McGill never followed through properly before Mr. Taylor's death.

3. McGill told OSHA that it would "improve their Safety Program with monthly Safety Meetings and documentation" and that it would establish an "Employee Safety Committee" to address safety hazards, as of 2002. Doc. 29-7, pp. 67, 84. There is no indication that this ever happened before Mr. Taylor's death.[3]

Plaintiff's experts have also noted the clear violations of its safety duties that the Defendant has engaged in. *See* **Exhibit 3** – expert report of Al Weaver (without exhibits). These combined facts clearly establish a credible *prima facie* claim for punitive damages. However, to date Defendant states it will not allow its witness to answer all punitive damages questions at the deposition but instead wants to limit the discovery to written questions for the lawyers to craft answers, and then, only after summary judgment. See meet-and-confer emails, **Exhibit 7**.

### III. ARGUMENT

A. **Legal Standard**.

Rule 30(b)(6) provides that "[i]n its notice … a party may name as the deponent a … private corporation … and must describe with reasonable particularity the matters for

---

[3] Defendant refused to produce this information despite being asked to do so in discovery. Plaintiff was required to go directly to state OSHA authorities through public record requests to obtain the documents.

examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf …."

Unless otherwise limited by court order, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim. Fed. R. Civ. P. 26(b)(1). Further, "a defendant's financial position is a proper consideration in assessing punitive damages." *Stamathis v. Flying J, Inc.,* 389 F.3d 429, 442 (4th Cir. 2004) (citation omitted).

Some courts have indicated that the Plaintiff should not merely rely on boilerplate allegations to support punitive damages discovery but show a credible basis for a claim. *See Shearin v. Safelite Glass Corp.*, 1998 U.S. Dist. LEXIS 8115, *2-5 (E.D.N.C. April 15, 1998) (noting that defendant's financial status is critical to deciding award of punitive damages and allowing discovery after prima facie basis shown); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993) (noting cases for the proposition that "a plaintiff must make some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth"); *Moore v. Dan Holdings, Inc*., No. 1:12CV503 (M.D.N.C. April 30, 2013), pp. 24-34 (collecting cases); *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02CV00146, 2004 WL444570, *1 (M.D.N.C. Feb. 24, 2004) (court first denied disclosure of financial information because of lack of credible showing of punitive damages claim, then later allowed) (unreported cases are at **Exhibit 5**).

Here, even prior to summary judgment the Plaintiff has put forth a detailed record providing a credible basis for the punitive damages claim. It is appropriate to allow the discovery consistent with the general rule under Rule 26(b)(1) that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant" and the principle that "[t]he rules

of discovery, including Rule 26, are to be given broad and liberal construction." *Johnson v. City of Fayetteville,* No: 5:12-CV-456-F (E.D.N.C., May 29, 2013), p. 7 (citing cases).

    B. **Plaintiff Makes a *Prima Facie* Showing of Entitlement to Punitive Damages and are Accordingly Entitled to the Discovery.**

In light of the above facts, it is clear that the Plaintiff has stated far more than a "boilerplate" claim for punitive damages. It is clear that courts declining to allow punitive damages discovery were concerned over plaintiffs obtaining the discovery when they had only made vague allegations. Accordingly, this Court in *Blount* indicated that "a plaintiff must make some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth." 162 F.R.D. at 105. Here, the Plaintiff has done so.

North Carolina's punitive damages statute defines "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). To recover punitive damages, a plaintiff must prove willful or wanton conduct by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b). A course of conduct may be wanton when it manifests "a reckless indifference to the rights of others." *See Yates v. Air & Liquid Sys. Corp.*, No. 5:12-cv-752-FL (E.D.N.C. Sept. 30, 2014), pp. 31-32 (*quoting Yancey v. Lea*, 354 N.C. 48, 52-53 (2001)). "Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others." *Id.*

Here, the facts present a jury issue regarding whether based on all the evidence presented, Defendant knew that just as past injuries from toxic gases had occurred, more injuries were likely to occur in the future, and yet Defendant continued its unsafe practices unabated. Here it may fairly be said that Defendant acting through its corporate management "knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results." *Yates,*

8

*supra* (*quoting Akzona, Inc. v. S. Ry. Co.*, 314 N.C. 488, 496 (1985)).  Defendant was receiving at best minor state OSHA penalties while it made promises of safety improvements that it did not keep.  Even after employees like Mr. Jugger and Mr. Artis were taken to the hospital with gas exposure injuries, these practices continued.  This course of conduct culminated in the death of Mr. Taylor, which could have readily been prevented.

One purpose of punitive damages is to punish and deter.  Evidence that a company has repeatedly allowed safety problems and injuries to happen despite knowing of the facts is relevant both to show the corporate management's willful disregard, and, to show why an award is appropriate to deter future misconduct.  *See Everhart v. O'Charley's Inc.*, 683 S.E.2d 728, 200 N.C. App. 142 (2009).  That court in affirming a punitive damages award against a restaurant chain that poisoned a patron, noted evidence that the chain had suffered prior similar incidents yet did not act appropriately.  683 S.E.2d at 734.  That court also noted how "[a] corporation may be subject to punitive damages based on a theory of direct liability where the corporation's acts or policies constitute the aggravating factor."  683 S.E.2d at 737.  The court affirmed the punitive damages verdict.  *Id.* at 739-42.

Here, one of the Plaintiff's claims is that Defendant deliberately refused to make safety upgrades and continued to use the lowest-cost safety measures and bare-bones, out-of-date tanker trucks in order to minimize costs.  In fact Defendant's tanker truck lacked even the most basic of safety devices that could have allowed workers to track how full the tanker was becoming with waste from a safe distance instead of having to hold their face close to the hatch.  These devices may be purchased for costs as low as $100 or less as described in the rebuttal report of Mr. Weaver, attached as **<u>Exhibit 6</u>**.  As the FAC describes, Defendant used tankers more than 30 years old and failed to install safety equipment, and sent tankers to load waste in

9

Case 7:13-cv-00270-D   Document 45   Filed 12/23/14   Page 9 of 11

dangerous conditions at night in order to obtain more fees.  FAC ¶¶ 5, 16, 28, 31-32.  Repeated gas and fumes exposure incidents should have led this company to change its practices long ago. These facts support a punitive damages claim and clearly the Plaintiff is entitled to full and unencumbered discovery on her punitive damages topics found in the deposition notice.

Further Plaintiff is entitled to do so through directly questioning the corporate representative at his deposition.  As noted above, in written discovery responses Defendant has failed to provide relevant information and has provided inaccurate responses.  Plaintiff is entitled to take deposition testimony under oath in an effort to obtain accurate information.

The email correspondence to date reflects that while the deposition of the Rule 30(b)(6) representative has been set for January 7th, Defendant continues to refuse to agree to allow him answer relevant questions.  Plaintiff requests that the Court order that the questions be answered. If the deposition must be re-opened to allow that to occur, the Defendant should be required to pay the associated costs.

## IV.  CONCLUSION

Plaintiff respectfully requests that her motion to compel be allowed.  A proposed order is attached at **Exhibit 6**.

Respectfully submitted, this the 23rd day of December, 2014.

> By:  _/s/ Mona Lisa Wallace_____
> Mona Lisa Wallace, NCSB # 9021
> John Hughes, NCSB # 22126
> 525 North Main Street
> Salisbury, NC 28144
> Tel. 704 633-5244
> Fax 704 633-9434
> mwallace@wallacegraham.com
> jhughes@wallacegraham.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

This the 23rd day of December, 2014.

Respectfully submitted,

WALLACE AND GRAHAM, P.A.
*Attorneys for Plaintiffs*

By: /s/ Mona Lisa Wallace
Mona Lisa Wallace, NCSB # 9021

**EXHIBITS**

1. notice of deposition.
2. amended notice of deposition.
3. Weaver expert report.
4. Weaver rebuttal report.
5. unreported cases.
6. proposed order.
7. meet-and-confer correspondence.